[Civ. No. 2737. Second Appellate District. Division One.—March 18, 1920.]

## LEO G. McLAUGHLIN COMPANY (a Corporation), Appellant, v. A. L. PHILLIPS et al., Respondents.

[1] BROKER'S COMMISSIONS — EXCHANGE OF REAL PROPERTIES — DELIVERY OF DOCUMENTS EMPLOYING PLAINTIFF—PAROL EVIDENCE.—In an action to recover on a contract to pay a commission for services rendered in procuring an exchange of real property, parol evidence is admissible to prove that the documents on which the plaintiff relies to prove its authority and right to the commission, though executed by the defendants, were not effectively delivered.

[2] CORPORATIONS—EXCHANGE OF REAL PROPERTIES—POWER OF PRESIDENT.—The president of a corporation has not the authority to bind the corporation to an agreement to exchange real properties.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. G. Allen for Appellant.

Clifford H. Phillips, David E. Bergman and Alfred H. McAdoo for Respondents.

CONREY, P. J.—Action to recover on a contract to pay a commission of one thousand dollars for services rendered in procuring an exchange of real property of defendants for other real property. Judgment for the defendants, from which the plaintiff appeals.

---

2. Power of president of corporation as to contracts, generally, note, 14 L. R. A. 356.

Authority of officer of corporation to enter into contract for sale or purchase of real estate, note, Ann. Cas. 1917A, 482.

Appellant contends that the findings "are not supported or justified by the evidence." The record being presented by means of a reporter's typewritten transcript and there being no definite specifications therein, nor in the briefs, showing the particulars wherein the evidence is claimed to be insufficient, the court might be well justified in declining to frame for appellant the definite specifications of insufficiency of the evidence which should have been presented. However, to the extent that we are able to do so, we have endeavored to ascertain the merits of the case.

The last paragraph of finding II reads as follows: "That it is not true that on or about June 1st, 1917, or at any other time, said defendants promised and agreed in writing to pay to plaintiff the sum of $1000.00, or any other sum, as commission for its services, providing the plaintiff could find and produce the owner of certain other property secondly described in said agreement made a part of plaintiff's complaint as Exhibit A, ready, willing and able to exchange the property last described in said agreement for the property first described in said agreement, but it is true that defendants signed and delivered to plaintiff the agreement a copy of which is attached to plaintiff's complaint and marked Exhibit A, but with the express statement and understanding that said agreement in its operation and effect was conditional and contingent upon the sister of the defendant Pierce consenting to the exchange of said property in which she had an interest." The evidence, without contradiction, proves that Mrs. Smith, a sister of defendant Pierce, was the owner of a one-fourth interest in one of the parcels of land first described in exhibit "A." Defendant Pierce testified that when he signed the document, exhibit "A," he stated to plaintiff's representative that his sister owned the interest above mentioned. "I told him that it would not go without she—that is, that I would reserve the right to have her consent to the signing of this instrument." On account of some informalities in exhibit "A," a correctional document was signed; and that also proving to be incorrect, a third instrument was prepared and signed, wherein, for the first time, the L. C. Reed Company, a corporation, the true owner of the property for which defendants were to trade, was named. Defendant Phillips testified that at the time of signing the last-named document by

the defendants, defendant Pierce stated to Mr. Turner, who represented plaintiff in the matter, "Now, I am signing this with the understanding I will go right down and see my sister, to see if she is willing to let this property go through; if she is not, we can't trade." Pierce confirmed this testimony. It further appears that the proposed exchange of properties as then contemplated failed to proceed further at that time by reason of the nonconsent of Mrs. Smith. Some months later an exchange was made between the defendants and the L. C. Reed Company of a part of the property of defendants, omitting that in which Mrs. Smith was interested, for a part of the property of the L. C. Reed Company. The exchange, as finally made, not only included less property on both sides, but was made upon different terms with reference to encumbrances on the respective properties exchanged.

[1] Appellant contends that the court erred in receiving the testimony above mentioned and insists that in so doing the court violated the rule that oral evidence may not be received to alter the terms of a valid written instrument. The argument is that the document, exhibit "A," which is the instrument relied upon in the complaint, and the two subsequent documents referred to in the evidence, asserted that defendants were the owners of the property and that the court could not properly receive evidence to contradict such recital. Exhibit "A" did not in terms assert ownership, but did contain an offer to exchange the property therein described. The subsequent documents did refer to the defendants as the owners of the property described. Nevertheless, we are of the opinion that the evidence was receivable for the purpose of determining whether or not the documents, when signed and left in the possession of the plaintiff, were in legal effect delivered. "While it is true that the possession of a deed by the grantee is *prima facie* evidence that such deed was delivered by the grantor with intent that it should take effect according to its terms, yet such possession is not conclusive evidence of a valid delivery; and 'it may be shown by parol evidence that a deed in the possession of the grantee was not delivered.' (Devlin on Deeds, secs. 294, 295, and authorities there cited.) 'And even if the deed is deposited with the grantee, but for a purpose other than delivery, it would not take effect as a

deed; nor can a title be derived from a deed which has not been delivered. While, therefore, it is not competent to control a deed by parol evidence where it has taken effect by delivery, it is always competent by such evidence to show that the deed, though in the grantee's hands, has never been delivered.' (Washburn on Real Property, 311.)'' (*Black* v. *Sharkey*, 104 Cal. 279, [37 Pac. 939].) The evidence tended to show, and, therefore, was sufficient to authorize the court to find, that the writings in question, which incidentally contained a promise to pay the sum of one thousand dollars commission, were not effectively delivered. In finding III it is stated: ''That it is not true that plaintiff found and produced and introduced, or found or produced or introduced, to the defendants, the owners of the property secondly described in said agreement made exhibit ''A'' to plaintiff's complaint, and that said owners were ready, willing and able, or ready, willing or able to exchange their said property for defendants' said property. It is not true that subsequent to said introduction the defendants did effect an exchange of all or part of their property for a consideration satisfactory to said defendants, with the parties to whom plaintiff introduced them and brought them into relationship, and that said exchange was brought about and occasioned solely by and on account of plaintiff's efforts.'' Concerning the first sentence above quoted from finding III, the controversy is concluded by the conclusion hereinbefore announced. [2] We may say, however, that the record fails to show that the L. C. Reed Company, acting by any competent authority thereof, was ready or willing to make the exchange as originally contemplated in the writings signed by the defendants. It does appear that L. C. Reed, the president of that corporation, took part in the negotiations and was willing to proceed with the transaction; but there is no evidence that the corporation had authorized him to bind it in such transaction. He did not have such authority merely as president of the corporation. It does appear that negotiations were later resumed and that the defendants conveyed to the L. C. Reed Company a part of the property referred to in exhibit ''A,'' and received from that company in exchange therefor sixty acres less than the 182.36 acres originally suggested as the property to be conveyed by that company

to the defendants. Not only did the defendants receive so much less land, but they took it subject to a larger encumbrance than that specified in exhibit "A." It is not to be presumed, nor is the evidence sufficient to raise the inference, that the defendants, under the writings to which we have referred, obligated themselves to pay to the plaintiff the full sum of one thousand dollars on a later and substantially different transaction consummated by the parties themselves. This action is not upon a *quantum meruit* for services rendered by an authorized agent; nor is there any evidence of the value of the services rendered by the plaintiff, if any there were, having relation to such subsequent transaction.

The judgment is affirmed.

Shaw, J., and James, J., concurred.